COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA IN THE INTEREST OF M. B.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC2019-854
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

EN BANC

**********

Court composed of Sylvia R. Cooks, Chief Judge, Elizabeth A. Pickett, Billy Howard Ezell, Shannon J. Gremillion, John E. Conery, D. Kent Savoie, Van H. Kyzar, Candyce G. Perret, Jonathan W. Perry, Sharon Darville Wilson, Charles G. Fitzgerald, and Larry J. Vidrine[*], Judges.

**AFFIRMED; MOTION TO WITHDRAW DENIED; REMANDED.**

**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine Bldg 3, Room 150**
**Lafayette, LA 70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana, Department of Children and Family Services**

**Kasey L. Pharis**
**Attorney at Law**
**100 S. Louisiana Street, Suite 500**
**Abbeville, LA 70510**
**(337) 254-5387**
**COUNSEL FOR OTHER APPELLANT:**
      **J. B. (mother)**

---

[*] Honorable Larry J. Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**PICKETT, Judge.**

J.B.[1] appeals the judgment of the trial court terminating her parental right to her minor child, M.B. Appellate counsel for J.B. has filed a brief alleging that there are no non-frivolous errors in the judgment reached below and petitions this court to withdraw as counsel for J.B. pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

## FACTS

M.B. was taken into the state custody in August 2019, when the child was three years old. J.B., her mother, had turned in a prayer request at a local church asking for prayers that her live-in boyfriend would stop touching her daughter so that she could have "a godly man." The state investigated the report. A forensic examination found evidence that M.B. had been sexually abused. M.B. has remained in the custody of the state since that time as a child in need of care.

While J.B. worked the case plan assigned to her, it became obvious that several obstacles kept her from regaining custody of her daughter. She had limited social security income because of scoliosis and manic bi-polar disorder. During the course of this proceeding, J.B.'s income shrank from $466 to $300 because she failed to complete paperwork necessary to maintain a $166 benefit. J.B. had a job briefly at a hotel but quit because she could not handle the fumes from the cleaning supplies. She relied heavily on her mother for support. J.B. also did not drive, so her mother was her transportation. In addition to the case plan assigned by the trial court, the court ordered a psychological evaluation of J.B.

On May 12, 2020, the trial court changed the recommended disposition from reunification to adoption. On October 7, 2020, the state filed a petition to

[1] The parties and the minor child are referred to by their initials to preserve their anonymity in this confidential proceeding pursuant to Uniform Rules – Courts of Appeal, Rules 5-1(a) and 5-2.

terminate the parental rights of J.B. The petition alleged that (1) J.B. failed to cooperate in the case plan assigned to her, (2) J.B. showed a lack of substantial improvement in redressing the problems which prevented reunification, (3) the conditions which led to the child's removal continue to persist, (4) J.B. suffers from mental illness or mental deficiency which renders her incapable of exercising parental responsibilities without exposing her child to substantial risk of harm, based on an established pattern of behavior, and (5) J.B. is unable or unwilling to provide adequate permanent housing.

Following a trial on June 21, 2021, the trial court terminated the parental rights of J.B., stating:

> So I, certainly, think that the mother has attempted to comply with her case plan and has done, to the best of her ability, to comply with that case plan. I think that the mother genuinely loves her child and wants to be a mother. My concern is that I have, both from personal observation and historical connection with [J.B.], observed inability to provide protective capacity. Both having dealt with the previous cases with [J.B.] years and years ago to this case presently, I believe she does not possess the mental capability of providing protective capacity for her child. I think it's evident, by the way this case came into this Court's jurisdiction, her inability to call law enforcement instead of putting a card into a church basket for help for her child who had been sexually molested.

> I believe that presently she does not possess income capable of providing for a child. She doesn't have transportation and other things that would be necessary to provide for the child. Her reliance on her mother for the basic needs for herself, as well as her child, are a concern for the Court. With her mother's present hospitalization and age, I don't believe that that reliance could be relied on into the future.

> Most importantly, the Court, quoting from Dr. [Susan] Lambert, is that she is at high risk for continuing to engage in practices which could negatively impact the health and safety of her children.

The trial court found it in the best interest of M.B. to terminate the parental rights of J.B. Appellate counsel was appointed to represent J.B in this appeal, who

has filed an *Anders* brief alleging there are no non-frivolous errors in the proceedings below and asking to withdraw as counsel for J.B.

## ASSIGNMENT OF ERROR

While counsel for the appellant assigns no errors, this court is required to independently review the record to determine whether any possible error exists.

## DISCUSSION

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

> Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.
>
> . . . .
>
> . . . .In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

Louisiana Children's Code Article 1036 states, in pertinent part:

C. Under Article 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The state presented evidence that J.B.'s parental rights to four of her children have been terminated: two in 2003, one in 2008, and one in 2010. Rather than contact law enforcement when M.B. was raped by her boyfriend, J.B. placed a

4

prayer card at church asking for prayers that this man would stop touching M.B. J.B. has not maintained employment, and her disability income is not enough to support her and her child. Her mother, who in the past has provided financial support and transportation, was in the hospital at the time of the hearing and is not able to provide the assistance she once did. While the trial court found that J.B. did work her case plan, he found that the mental evaluation he ordered be done by Dr. Lambert supported termination of parental rights.

Dr. Lambert's report indicates that J.B. has been diagnosed with bipolar disorder and postpartum depression. She has been hospitalized for suicidal ideations. Dr. Lambert stated:

> Perhaps the biggest concern with regard to risk is Ms. Breaux's report of continuing relationships with persons who have been abusive in the past, an inability to accept responsibility for her choices, and an apparent prioritization of romantic relationships over the needs of her children. . . . Ms. Breaux is at current High risk for maladaptive behavior in the future.

We find that the evidence supports the trial court's finding that the state proved by clear and convincing evidence that the parental rights of J.B. to her daughter M.B. should be terminated, and that termination of parental rights is in the best interest of the child. Thus, we affirm the judgment of the trial court.

Having performed our review of the record, we now address counsel's motion to withdraw pursuant to *Anders*, 386 U.S. 738. *Anders* implicated a criminal defendant's constitutional right to counsel as guaranteed by the Sixth Amendment to the United States Constitution. On appeal, counsel for an indigent defendant entitled to appointed counsel must act as an active advocate on behalf of his client. *Id.* The attorney's role as advocate requires that he or she support the client's appeal to the best of his or her ability. *Id.*

5

In acknowledging that there are no issues which merit reversal of the trial court's judgment, appellate counsel has satisfied her duty of candor towards this court. *See* La.Rules Prof.Conduct, Rules 3.1 and 3.3. Likewise, she has properly communicated with her client as required by La.Rules Prof.Conduct, Rule 1.4. Nevertheless, we find *Anders* inapplicable to this case, as it is limited to an appeal of a criminal conviction. We therefore deny the motion to withdraw, finding the motion more appropriately directed to the appointing authority, the trial court. *See* La.Ch.Code art. 1016.

<u>**CONCLUSION**</u>

The judgment of the trial court is affirmed. The motion to withdraw filed by J.B.'s counsel is denied, and the case is remanded to the trial court for disposition of the motion to withdraw.

**AFFIRMED; MOTION TO WITHDRAW DENIED; REMANDED.**